IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

EDWARD SAMUEL,
   *Defendant.*

Criminal Action No. ELH-16-117

**MEMORANDUM OPINION**

Edward Samuel, who is 53 years of age, is serving a sentence of 156 months' incarceration, dating to February 2, 2016. He filed a pro se "Motion for Compassionate Release Due to COVID-19." ECF 48. Thereafter, through counsel, Samuel filed a "Memorandum in Support of Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 53. I shall refer to ECF 48 and ECF 53 collectively as the "Motion." The Motion is supported by five exhibits. ECF 53-1 to ECF 53-5. The government opposes the Motion (ECF 58) and has submitted three exhibits. ECF 58-1 to ECF 58-3. Defendant has replied. ECF 61.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I. Background**

On March 24, 2016, a grand jury in the District of Maryland issued a four-count indictment charging Samuel as follows: possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841 (Count 1); felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g) (Count 2); possession of a firearm with obliterated, removed and altered serial number, in violation of 18 U.S.C. § 922(k) (Count 3); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 4). ECF 1.

Pursuant to a Plea Agreement (ECF 34), Samuel entered a plea of guilty to Count 1 and Count 4 on January 9, 2017.  ECF 33. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a total sentence ranging from 156 to 192 months of incarceration.  In particular, the Plea Agreement provided for a sentence of 96 to 132 months' incarceration for Count 1 and the mandatory minimum sentence of 60 months, consecutive, for Count 4.  ECF 34, ¶ 9.

The Plea Agreement included a stipulation of facts.  *Id.* at 9.  According to the stipulation, Samuel distributed quantities of heroin and cocaine in Baltimore City. *Id.*  During a search of Samuel's home, law enforcement found 171 grams of heroin and 25.8 grams of cocaine that he "intended to distribute" to "his customers."  *Id.* Law enforcement also recovered three loaded firearms.  *Id.*  And, defendant admitted "that he possessed these firearms in furtherance of a drug trafficking crime."  *Id.*

According to the Pre-Sentence Investigation Report ("PSR," ECF 39), Samuel had a base offense level of 24 for Count 1.  *Id.* ¶ 13.  However, the defendant qualified as a Career Offender, pursuant to U.S.S.G. § 4B1.1, because this was the defendant's third conviction for a felony controlled substance offense. *Id.* ¶ 19.  Therefore, after deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, Samuel had a final offense level of 31.  *Id.* ¶ 31. And, as noted, under Count 4, Samuel was subject to a mandatory minimum term of imprisonment of five years, consecutive, pursuant to 18 U.S.C. § 924(c).  *Id.* ¶ 24.

As a Career Offender, defendant's Criminal History Category was VI. *Id.* ¶ 38; *see* U.S.S.G. § 4B1.1(b).  If Samuel were not a Career Offender, however, he would have had a Criminal History Category of III, based on a total criminal history score of six points.  ECF 39, ¶ 37.

Based on an offense level of 31 and a Criminal History Category of VI, Samuel's Guidelines for Count 1 called for a period of incarceration ranging from 188 to 235 months. *Id.* ¶ 60.[1] However, because the defendant qualified as a Career Offender and was also convicted of a violation of 18 U.S.C. § 924(c), the Guidelines range increased to 262 to 327 months in prison. *Id.*; *see* U.S.S.G. §§ 4B1.1(c)(3); 5G1.2(e).

Sentencing was held on March 16, 2017. ECF 41. At the time, the defendant was 50 years old. ECF 39 at 2. Defendant, who has a high school diploma, has only been employed for a period of approximately two years. *Id.* ¶ 56. And, he began abusing marijuana, heroin, and prescription opiates at 18 years of age. *Id.* ¶ 54. The PSR also reflected that defendant is a diabetic with high blood pressure. *Id.* § 52.

Pursuant to the Plea Agreement, I imposed a sentence of 96 months for Count 1, and a consecutive sentence of 60 months for Count 4, for a total term of 156 months' incarceration, with credit from the date of arrest on February 2, 2016. ECF 43 (Judgment); ECF 44 (Statement of Reasons). Thus, Samuel's sentence was well below the advisory sentencing Guidelines range. And, the sentence corresponded to the bottom of the C plea range of 156 to 192 months.

Samuel, who was born in February 1967, is now 53 years of age. ECF 39 at 2. He is presently incarcerated at USP Lewisburg, in a minimum security camp. ECF 61 at 10. To date, Samuel has served about 57 months of his sentence. This equates to about 37% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). His current projected release date is May 31, 2027. ECF 61-1 (Individualized Reentry Plan).

---

[1] If defendant were not a Career Offender, his Guidelines for Count 1 would have been 46 to 57 months of incarceration. Combined with Count 4, his total Guidelines would have been 106 to 117 months.

Notably, defendant has several health issues. His medical history includes Type 2 diabetes, hypertension, chronic kidney disease, polyosteoarthritis, degenerative joint disease, and gout. ECF 39, ¶ 52; ECF 53 at 4; ECF 53-4 (Medical History).

Samuel filed a request for compassionate release with the Warden on May 11, 2020. The request was denied on May 13, 2020. ECF 53-5.

Additional facts are included, *infra*.

## II.   Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See*

*Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the

defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

As indicated, in resolving a compassionate release motion, a court must consider the factors in 18 U.S.C. § 3553(a). *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). And, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>   (I)  suffering from a serious physical or medical condition,
>
>   (II) suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate

Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of November 18, 2020, COVID-19 has infected more than 11.5 million Americans and caused over 250,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Nov. 18, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools have reopened, many are subject to substantial restrictions. And, in view of the recent resurgence of the virus, businesses and schools are again facing restrictions or closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available, although it appears that a vaccine is on the horizon. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight, pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social

distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 58 at 10-12 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[4] As of November 18, 2020, the BOP had 125,308 federal inmates and 36,000 staff. Also as of

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450

November 18, 2020, the BOP reported that 3,048 inmates and 1,113 BOP staff currently tested positive for COVID-19; 18,160 inmates and 1,677 staff had recovered from the virus; and 141 inmates and two staff member have died from the virus. And, the BOP has completed 75,896 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to USP Lewisburg, where the defendant is a prisoner, the BOP reported as of November 18, 2020, that no inmates currently test positive for COVID-19 but 86 inmates have recovered at the facility and two staff members currently test positive. The facility has completed 527 Covid-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020).

### IV. Discussion

Samuel moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. ECF 53 at 8-14. Defendant suffers from diabetes, hypertension, and kidney disease, among other conditions. *Id.*; ECF 53-4 at 1. Moreover, Samuel contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served. ECF 53 at 14-16.

The government opposes defendant's Motion at each step of the analysis. The government "does not deny that [defendant] suffers from multiple negative health conditions," but contends that they do not make him eligible for release. ECF 58 at 20. Even though the defendant is "at increased risk" because of his kidney disease and his diabetes, the government

---

inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

observes that he "is not undergoing treatment" and he "has not been compliant with his prescribed medical treatment." ECF 58 at 17-18; *see* ECF 58-3 (Medical Records) at 1. Further, the government maintains that the defendant's hypertension is under control. ECF 58 at 18. And, in any event, the government argues that Samuel remains a danger to the community and the § 3553(a) factors militate against reducing his sentence. *Id.* at 23-28.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However, numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including diabetes and hypertension, as well as age, qualify as a compelling reason for compassionate release. *See, e.g., See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. Apr. 2020) (defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. Apr. 2020) (finding defendant's hypertension and diabetes qualified as extraordinary and compelling reason).

Accordingly, I am satisfied that Samuel satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider whether, if released, Samuel would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The government urges that conclusion, citing the seriousness of his offense, including the possession of loaded firearms, and the defendant's prior criminal history, which consists of numerous prior convictions. ECF 58 at 24-26.

Samuel acknowledges the seriousness of the crime at issue here. ECF 53 at 14. But, he argues that it "did not involve leading or managing a large-scale organization, nor did it involve any violence." *Id.* And, he has no history of violence. *Id.*

As I see it, the sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing Samuel's sentence at this time. These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Samuel's prior record is relevant to this analysis. From 1985 to 2006, defendant amassed numerous convictions, including several drug and handgun convictions. ECF 39, ¶¶ 28, 29, 30, 31, 32, 35. For most of these convictions, Samuel received sentences ranging from one to four years. *See id.* ¶¶ 28, 30, 34, 35. But, in the Maryland penal system, a defendant is eligible for parole, and generally does not serve the whole sentence. For other offenses, the defendant received sentences under a year. *See id.* ¶¶ 27, 29, 31, 33. And, in 2001, defendant received a sentence of five years for possession with intent to distribute heroin and a handgun possession.

*Id.* ¶ 32.  He served about three years of that sentence.  *Id.*  Yet, these numerous prosecutions and convictions, along with time in prison, did not deter defendant from the commission of the offense that led to his federal prosecution.

In the time that defendant has been in federal prison, he has not received any disciplinary infractions.  His good behavior while incarcerated warrants recognition under 18 U.S.C § 3553(a).  In addition, Samuel has worked in the cafeteria for over two years and he has participated in multiple BOP programs, including a drug education class.  ECF 61 at 10.  These are positive steps on defendant's part.  However, the defendant has only served about 37% of his sentence.  And, that sentence was significantly below the Guideline's range and at the bottom of the C Plea range.

Significantly, the offenses are serious; drugs and guns are a dangerous combination. Given the facts of the offense, coupled with the defendant's prior criminal history and the abbreviated time that defendant has served to date, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

### V.      Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 53), *without prejudice*.

An Order follows, consistent with this Memorandum Opinion.


Date:   November 20, 2020                                        /s/
                                                         Ellen Lipton Hollander
                                                         United States District Judge